UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHERYL J. CUNNINGHAM, Individually and as Personal Representative of the Estate of SCOTT RANDALL CUNNINGHAM, Deceased, JOHN J. CUNNINGHAM, Individually; and KEVIN CUNNINGHAM, Individually, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | ) Case No. 2:07-CV-174<br>) |
| SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE, | )<br>)<br>) |
| Defendant | ) |

OPINION AND ORDER

This matter is before the court on the Motion to Compel Smithkline Beecham to Produce Substantive Responses and Documents to Plaintiffs' Third Request for Production of Documents, and Request for Sanctions [DE 101] filed by the plaintiffs on May 5, 2008. For the reasons set forth below, the Motion to Compel is **GRANTED**, and the Request for Sanctions is **GRANTED IN PART** and **DENIED IN PART**.

Background

The background to this cause of action was described in the orders of June 25, 2008 and October 1, 2008, and is repeated here as necessary. This case arises from the suicide of 14-year old Scott Cunningham in March 2001. In their complaint, the plaintiffs, Scott Cunningham's mother, father, and brother (the Cun-

ninghams), allege that his suicide was caused by the prescription anti-depressant marketed under the name Paxil and manufactured by the defendant Smithkline Beecham, doing business as Glaxosmithkline (Smithkline).

The Cunninghams allege that beginning in 1994, Smithkline became aware that Paxil was ineffective for the treatment of depression in adolescents and that the drug increased the risk of suicide in adolescent patients. During the period of 2000 to 2004, the Cunninghams claim eight Smithkline sales representatives made over 52 sales calls on the prescribing physician, Dr. Sudhakar Garlapati. (Pltf. Reply, p. 9) The Cunninghams assert Smithkline knew Paxil was dangerous, but in 2003 instructed sales representatives not to disclose the information to doctors. (Pltf. Comp. p. 8) The Cunninghams further contend that Smithkline knew that, despite the lack of approval for use in treating adolescent depression, so-called "off-label" prescriptions of Paxil were sufficient to make the drug the second most prescribed anti-depressant for children and adolescents. The Cunninghams allege that through a series of conferences, articles, and other promotional efforts, including the use of paid "opinion leaders," Smithkline promoted the use of Paxil for children.

Count I of the Cunninghams' complaint claims Smithkline negligently misrepresented the safety and effectiveness of Paxil's pediatric use through the company's research, manufacturing, marketing, and distribution practices. Count II alleges Smithkline was negligent in its duty of pharmaco-vigilence

because Smithkline failed to monitor the safety of Paxil and to continuously inform the medical profession of its dangers. Count III asserts Smithkline is strictly liable for the death of Scott Cunningham because Smithkline knew Paxil was dangerous for pediatric use but failed to warn the medical profession. Count IV claims Smithkline is liable for a breach of express warranty because Smithkline sold Paxil to the medical community as an effective, safe, and proper drug for pediatric use. Count V seeks punitive damages alleging Smithkline represented Paxil was safe and effective for pediatric use through fraudulent marketing. Counts VI, VII, and VIII are actions for loss of companionship and income, survival, and negligent infliction of emotional distress.

The discovery disputes addressed here involve the requests for production of documents served upon Smithkline. The motion to compel seeks substantive responses and documents from Smithkline regarding the revenue and profits from the sale of Paxil and the advertising, promotional, and educational materials Smithkline disseminated to the medical community between 2000 and 2004. Specifically, Requests for Production 1-4 seek the revenue and profits from the sale of Paxil in Indiana and the United States. Requests for Production 6-13 seek the advertising, promotion, and education budgets and spending on Paxil programs for pediatric use in Indiana and the United States. Request for Production 14 seeks documents pertaining to all Paxil pediatric prescriptions written in Indiana. Request for Production 16

requests the complete files of every Smithkline sales representative who made a sales call on Dr. Garlapati.  Request for Production 23 seeks promotional videotapes or visual aids for Paxil that contain references to children or adolescents.  Requests for Production 25 and 26 seek any education campaign materials disseminated to the medical community that discussed the correlation of suicide and Paxil.

In the Reply in Support of their Motion to Compel filed on June 4, 2008, the Cunninghams have agreed to limit discovery of Requests for Production 1-4 to financial information from sales in Indiana.  (Pltf. Reply, p. 4)  Accordingly, Requests for Production 1 and 3 are no longer at issue in this dispute.

The remaining requests for production derive from the delay in discovery caused by Smithkline's failure to adequately provide responses to Requests for Production 2, 4, 6-14, 16, 23, 25, and 26.  The deadline for fact discovery was April 7, 2008.  The Cunninghams served their Third Request for Production on Smithkline on March 6, 2008.  (Pltf. Motion, Exh. A) Smithkline responded to the Cunninghams' Third Request for Production on April 8, 2008.  (Pltf. Motion, Exh. B)  Smithkline produced no documents in this response and objected to all requests for production on the grounds that the discovery was overly broad, unduly burdensome, irrelevant, inadmissible, and protected by attorney-client or work product privilege.  (Pltf. Motion, Exh. B).

On April 14, 2008, a phone conversation between the Cunninghams' counsel and Smithkline's counsel took place regarding the inadequacies in Smithkline's responses.[1] On April 24, 2008, the Cunninghams' counsel informed Smithkline the responses to the Third Request for Production were inadequate and requested Smithkline to respond properly by April 28, 2008.[2] Counsel for Smithkline responded by letter on April 28, 2008, and assured more detailed responses to the discovery requests would be provided "in a reasonable time." (Pltf. Motion, Exh. L, p. 3) When Cunninghams' counsel did not receive a response from Smithkline by May 5, 2008, she filed the motion to compel on May 5, 2008, after numerous unsuccessful attempts to resolve the discovery dispute. (Declaration of Nicole Maldonado, p. 2) On May 15, 2008, Smithkline's counsel refused to produce any of the requested discovery by claiming it was overly broad, unduly burdensome, irrelevant, or inadmissible.

## Discussion

The Federal Rules of Civil Procedure place no time limit for filing a motion to compel discovery. The matter is left to the broad discretion possessed by the district courts to control discovery. ***Semien v. Life Ins. Co. of North America***, 436 F.3d

---

[1] The scope of discovery discussed during this phone call is disputed between the parties. (Pltf. Motion, Exh. K, p. 2; Pltf. Motion, Exh. L, p. 2) However, the nature of the phone call is sufficient to demonstrate the parties attempted to confer on April 14, 2008 to resolve outstanding discovery disputes without court intervention.

[2] The Cunninghams' counsel certified the need for prompt reply to the request was due to a mutually agreed motion to compel cut-off date of May 5, 2008. This deadline is not listed on the court docket. However, the Cunninghams' counsel, Kate Gillespie, submitted a sworn statement that this agreement occurred at the October 1, 2007 Joint Report of Rule 26(f) Meeting. (Declaration of Kate E. Gillespie, p. 1)

805, 813 (7th Cir. 2006). Smithkline asserts that the motion to compel is untimely because they failed to file it before the close of discovery and because the Cunninghams waited until a month before the close of discovery to serve "extensive and burdensome discovery." [3] (Deft. Reply, p. 6)  However, the Cunninghams served the Third Request for Production on Smithkline more than a month before the close of discovery. Smithkline elected not to respond adequately to previous requests for production and then responded to the third request after the close of discovery. Smithkline's delay tactics should not unfairly prejudice the Cunninghams. See *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 342 (N.D. Ill. 2005) ("Where a party has contributed to a plaintiff's confusion or has caused delays in discovery, it can hardly . . . complain about continued discovery . . . [c]ourts ought not to reward those who needlessly allow confusion to persist or who are the cause of discovery delays.") (internal quotations and citations omitted). The court finds the Cunninghams' Motion to Compel timely.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discov-

---

[3] Smithkline also claims the Cunninghams failed to meet and confer as required by Local Rule 37.1. (Deft. Opp. p. 4)  However, the Cunninghams' attorney provided satisfactory certification of multiple attempts to resolve the dispute before filing with the court. (Maldonado Dec. pp. 1-3)

ery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (*quoting* *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003). *See* *Adams v. Target*, 2001 WL 987853 at *1 (S.D. Ind. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter in the action."). *See also* *Shapo v. Engle*, 2001 WL 629303 at *2 (N.D. Ill. May 25, 2001) ("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002). That burden cannot be met by "a reflexive invocation of the same

7

baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." ***Burkybile v. Mitsubishi Motors, Corp.***, 2006 WL 2325506 at *6 (N.D. Ill. Aug. 2, 2006) (internal quotations and citations omitted). Rather, the court should consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." ***Patterson v. Avery Dennison Corp.***, 281 F.3d 676, 681 (7th Cir. 2002) (*quoting* ***Rowlin v. Alabama***, 200 F.R.D. 459, 461 (M.D. Ala. 2001).

Requests for Production 2 and 4 seek information pertaining to Smithkline's revenue and profits received from pediatric Paxil sales in Indiana between 2000 and 2004. Count V of the Cunninghams' complaint includes a claim seeking punitive damages from Smithkline. The Cunninghams have alleged that Smithkline fraudulently advertised and promoted the safety of Paxil in pediatric use, and should be liable for punitive damages. Due to the nature of the claims, the information requested is relevant to the claims in the complaint. *See* ***D'Onofrio v. SFX Sports Group, Inc.***, 247 F.R.D. 43, 52-53 (D.D.C. 2008) ("Information pertaining to a defendant's financial condition is relevant to the issue of whether punitive damages should be awarded."); ***Lane v. Capital Acquisitions***, 242 F.R.D. 667, 670 (S.D. Fla. 2005); ***Sonnino v. Univ. of Kansas Hospital Authority***, 220 F.R.D. 633, 654 (D. Kan.

2004); ***United States v. Matusoff Rental Company***, 204 F.R.D. 396, 399 (S.D. Ohio 2001). Smithkline argues discovery of the financial information is neither relevant nor admissible because the Cunninghams are precluded from recovering punitive damages under the Indiana Child Wrongful Death Statute. However, Smithkline's challenge to the claim for punitive damages is misplaced in this discovery dispute. See ***Alexander v. F.B.I.***, 194 F.R.D. 316, 326 (D.D.C. 2000) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.") (*quoting* 8 C. Wright & A. Miller, *Federal Practice and Procedure* §2008 (2d ed. 1994)). The Cunninghams' complaint has alleged facts sufficient to make a claim for punitive damages, and the financial condition of Smithkline is necessary to develop a claim for punitive damages at trial. Revenue and profits from the sale of Paxil in Indiana may be relevant to a jury determination of punitive damages if the jury finds that Smithkline knew of an increased risk of suicide and failed to warn physicians or the public about these risks. Accordingly, the Cunninghams' motion to compel responses to Requests for Production 2 and 4 is **GRANTED.**

Request for Production 14 asks Smithkline to produce documents concerning the number of pediatric prescriptions written for Paxil in Indiana between 2000 and 2004. The Cunninghams' complaint contends Smithkline was aware that Paxil was ineffective and dangerous in treating pediatric depression. Further, the complaint alleges Smithkline fraudulently concealed the dangers of the drug and continued to promote the safe and effec-

tive use of Paxil to the medical community and the public. Smithkline claims the volume of pediatric Paxil prescriptions is irrelevant or inadmissible. However, the number of pediatric prescriptions written for Paxil in Indiana is relevant to the claims of fraud and negligence. If at some point in time Smithkline realized Paxil posed a risk to pediatric patients but failed to share this information with the medical community in Indiana and with Dr. Garlapati, the number of pediatric prescriptions written in Indiana is germane to the determination of punitive damages. Therefore, Request for Production 14 is **GRANTED**.

Request for Production 16 requests complete sales files of any sales representative that called on Dr. Garlapati between 2000 and 2004. The complaint alleges Smithkline knew of the increased suicide risks associated with pediatric use of Paxil, but in 2003, it directed sales representatives not to discuss any of this information with doctors. (Pltf. Comp. p. 8) This request concerns whether the agents of Smithkline, the sales representatives, fraudulently represented the safety of Paxil to Dr. Garlapati. If at any time Smithkline knew Paxil posed a risk to pediatric patients but ordered its sales representatives to conceal this information from doctors, the files of the sales representatives are germane to the determination of punitive damages. Therefore, Request for Production 16 is **GRANTED**.

Requests for Production 6-13, 23, 25, and 26 relate to Smithkline's advertising, promotion, and educational campaigns

for pediatric Paxil use, and the respective budgets and actual spending from 2000 to 2004. These requests pertain to Smithkline's representations to the medical community and the public about the safety of Paxil, the known dangers and correlations to pediatric suicide, and whether appropriate warnings were issued concerning these risks. Smithkline objected using the same boilerplate language that such requests were overly broad, unduly burdensome, irrelevant, inadmissible, and protected by attorney-client or work product privilege. Further, Smithkline has stated the requests had no bearing on Dr. Garlapati's decision to prescribe Paxil to Scott Cunningham.

Dr. Garlapati's reasons for prescribing Paxil to Scott are relevant, but they are not determinative to the discovery of Smithkline's advertising materials. Requests for Production 6-13, and 25-26 are significant due to the allegations in the complaint. If Smithkline produced a pharmaceutical drug known to be dangerous to pediatric patients, and it failed to share this information with the medical community and the public through its advertising, promotion, and educational campaigns, this is relevant to the claim of fraud and could be germane to the determination of a punitive damages award. Another district court within the Seventh Circuit has addressed an identical dispute:

> The resources GSK dedicated to advertising, promoting, and conducting education programs about Paxil are relevant to the [] claims that GSK acted negligently when it failed to adequately warn physicians and consumers about increased suicide risk from use of the

11

> drug. GSK argues that the information is
> irrelevant because the [plaintiffs] do not
> show that [the suicide victim] or his pre-
> scribing physician relied on a misrepresenta-
> tion. However, the prevalence of Paxil adver-
> tising, the number of individuals receiving
> prescriptions, and exposure of the public and
> the medical community to Paxil without appro-
> priate warnings of suicide risks reasonably
> bears on the issues raised by the [plain-
> tiffs'] claims.  The more efforts and
> resources GSK expended to encourage use of
> its product, the more culpable its behavior
> in knowingly exposing users to an increased
> suicide risk without proper warnings. (inter-
> nal quotations and citations omitted).
>
> ***Forst v. Smithkline Beecham Corp.***, 2008 WL
> 4951155 at *2 (Nov. 18, 2008)

Additionally, the court is not convinced that advertising, promotional, or educational campaigns were prepared in anticipation of litigation to warrant attorney-client or work product privilege.

Request for Production 23 seeks any videotapes or visual aids promoting the use of Paxil that contains children or adolescents.  Similarly, this relates to Smithkline's representations to the medical community and the public regarding the use of Paxil with pediatric patients.  Smithkline asserts such materials do not exist and directs the court to rely on a statement by a former marketing employee.  (Def. Opp. p. 14, n.8)  The court does not find the statement of a former marketing employee sufficient to conclude that Smithkline never created any video-tapes, visual aids, or promotional materials for Paxil that contain images of children or adolescents.  Smithkline has not offered sufficient evidence, such as a sworn statement of a

12

Smithkline officer, that such material never existed.[4] Accordingly, Requests for Production 6-13, 23, 25, and 26 are **GRANTED**.

A party withholding production must claim the material is privileged or protected as work product and must describe the nature of the material in such a way that the requesting party can "assess the applicability of the privilege or protection." Federal Rule of Civil Procedure 26(b)(5). The withholding party bears the burden of proving the materials are privileged or protected from discovery. ***Brooks v. Gen. Cas. Co. of Wis.***, 2007 WL 218737 at *2 (E.D. Wis. Jan. 26, 2007) (*citing* ***United States v. Hamilton***, 19 F.3d 350, 354 (7th Cir. 1994) (evidentiary privileges in general); ***Binks Mfg. Co. v. Natl. Presto Indus., Inc.***, 709 F.2d 1109, 1119 (7th Cir. 1983) (work product doctrine specifically); ***United States v. BDO Seidman***, 337 F.3d 802, 811 (7th Cir. 2003) (attorney-client privilege specifically)). This requirement typically is met through the creation of a privilege log that "particularly and clearly sets forth the specific grounds for asserting the privilege or protection" as to each item. ***Brooks***, 2007 WL 218737 at *2. *See also* ***Hobley v. Burge***, 433 F.3d 946, 947 (7th Cir. 2006) ("An attorney asserting privilege must timely support that claim with a privilege log which describes the nature of each document being withheld.") (internal

---

[4] A federal district court in Texas handled a similar discovery dispute concerning Smithkline's failure to respond adequately to requests for production in a pending lawsuit concerning Paxil and pediatric suicide. Smithkline claimed the requested discovery did not exist, and the court ordered Smithkline to produce a sworn statement by an officer having the authority to speak on behalf of Smithkline that the requested information was not available. The court stated an appropriate officer would be the President, Chairman of the Board, or Chief Executive Officer. (Pltf. Reply, Exh. 3, pp. 15-16)

quotations and citations omitted).

Smithkline objected to all requests for production asserting attorney-client and work product privilege, yet failed to include a privilege log. Smithkline merely asserted a blanket objection that every request for production is protected by attorney-client or work product privilege. Blanket objections to requests for production based on privilege will not suffice to prevent production. See **Holifield v. U.S.**, 909 F.2d 201, 204 (7th Cir. 1990) (*citing* **U.S. v. First State Bank**, 691 F.2d 332, 335 (7th Cir. 1982)) ("A blanket privilege claim is not allowed . . . . [T]he privilege must be asserted on a document-by-document basis.") (internal quotations and citations omitted).

Acknowledging the harshness of a waiver sanction under Federal Rule of Civil Procedure 37, courts have reserved the sanction for cases where the offending party committed unjustified delay in responding to discovery. **Ritacca v. Abbott Laboratories**, 203 F.R.D. 332, 335 (N.D. Ill. 2001). "Evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver" of privilege by not properly claiming privilege in response to discovery requests. **Ritacca**, 203 F.R.D. at 335. Rule 26(b)(5) required Smithkline to produce a privilege log, or its functional equivalent, for all requested material withheld under attorney-client privilege or work product protection. Smithkline acknowledged the requirement to prepare a privilege log, but elected not to produce one unless ordered by the court. (Deft. Opp. p. 19)

14

Smithkline claims a privilege log is inappropriate because the information is undiscoverable, and the process would be burdensome, expensive, time consuming, and unnecessary. (Deft. Opp. pp. 19-20)  Smithkline's blanket objections do not provide any particular or clear indication of how the requests for production would be protected by attorney-client privilege or work product protection.[5]  Though the court does not find Smithkline's asserted privilege compelling, waivers of privilege are a serious sanction.  See **Muro v. Target Corp.**, 2007 WL 3254463 at *15 (N.D. Ill. Nov. 2, 2007) ("An order that privileged documents be disclosed as a sanction is appropriate . . . only if the party that authored the log has displayed willfulness, bad faith or fault.") (internal quotations and citations omitted).  Therefore, this court **ORDERS** Smithkline to provide a detailed privilege log that sufficiently explains the privilege of any disputed material. Additionally, the court warns Smithkline that failure to provide an appropriate privilege log within 30 days will constitute a waiver of any privilege.

This court will not award the most severe sanctions provided by Rule 37.  However, all requests for production are **GRANTED**, and the court **AWARDS** the Cunninghams all costs incurred in bringing this motion.  The Cunninghams are **ORDERED** to submit a new

---

[5] Smithkline suggests that the court convert its Opposition Motion into a Motion for Protective Order under Federal Rule of Civil Procedure 26(c)(1). (Deft. Opp. p. 20, n.13)  However, Smithkline failed to demonstrate with any specificity why a protective order is appropriate. The court is unconvinced by Smithkline's baseless, boilerplate objections to discovery.  The court grants all requests for production in the Cunninghams' Motion to Compel, and thus finds a motion for protective order is unnecessary.

affidavit of the expenses incurred in attempting to obtain the discovery requests. Further, Smithkline is **ORDERED** to produce all requested material within 30 days of this Order. Finally, Smithkline is **WARNED** that any failure in complying with court ordered discovery will result in sanctions of increased severity. Accordingly, the Cunninghams' Motion for Sanctions and Attorneys Fees is **GRANTED IN PART** and **DENIED IN PART**.

_____

For the foregoing reasons, the Motion to Compel Smithkline to Produce Substantive Responses and Documents to Plaintiffs' Third Request for Production of Documents, and Request for Sanctions filed by the plaintiffs on May 5, 2008, is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Compel is **GRANTED**, and the Request for Sanctions is **GRANTED IN PART** and **DENIED IN PART**.

Entered this 3rd day of February, 2009

                                           s/ ANDREW P. RODOVICH
                                             United States Magistrate Judge